UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                    CASE NO.

      Plaintiff,

vs.

CLAIRE'S BOUTIQUES, INC.,
a Foreign Profit Corporation
D/B/A CLAIRE'S

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND
## INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, CLAIRE'S BOUTIQUES, INC., a foreign profit corporation d/b/a CLAIRE'S (hereinafter referred to as "CLAIRE'S"), for declaratory and injunctive relief, and damages, and alleges as follows:

This action is brought under Title III of the Americans with Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

1)    This action is also brought pursuant to 28 C.F.R. Part 36.

2)    This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

3)    Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

4)    Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5)      Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6)      Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase a gift box.

7)      Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

8)      The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

9)      The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

10)     Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

11)     Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

12)     At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision whereby his vision fluctuates from 20/250 to 20/800.

13)     Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

14)     In addition, Plaintiff is an advocate of the rights of similarly situated disabled persons. As such is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated

websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

15)     Plaintiff is limited in the performance of major life activities due to his visual disability and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

16)     Plaintiff uses the computer regularly, but due to his visual disability, Plaintiff cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology and assistance. In order to assist him, Plaintiff uses NVDA screen reader software that is readily available commercially. As background, screen reader software translates the visual internet into an auditory equivalent.  The software reads the content of a webpage to the user at a rapid pace.

17)     "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC, 17-CV-767, 2017 WL 6542466, at \*6-7 (E.D.N.Y. Dec. 21, 2017)*.

18)     Plaintiff frequently accesses the internet. Because he is significantly and permanently visually disabled, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

19)     Defendant, CLAIRE'S, is a foreign profit corporation authorized to do business and doing business in the State of Florida.

20)     Defendant, CLAIRE'S, is a company that sells jewelry, hair supplies, beauty products, accessories, bags, toys and home décor. There is a retail location in Miami-Dade County.

21)     At all times material hereto, Defendant was and still is a private entity which owns and operates retail locations under the brand name "CLAIRE'S". The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

22)     Because Defendants are a store open to the public, each of Defendants' physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(B), and its implementing regulations, 28 C.F.R. Part 36.

23)     At all times material hereto, Defendant was and still is an organization owning and operating the website located at https://www.claires.com/. Since the website is open through the internet to the public as an extension of the retail stores, by this nexus the website is an intangible service, privilege and advantage of Defendant's brick and mortar locations, the Defendant has subjected itself and the associated website it created and maintains to the requirements of the ADA. The website also services Defendant's physical stores by providing information on its brand and

other information that Defendant is interested in communicating to its customers about its physical locations.

24)     Since the website allows the public the ability to view the products available at Defendant's locations, purchase products, through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand, the website is an extension of, and gateway to, Defendant's physical stores which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). By this nexus between Defendants' retail store locations and the Website, and the fact that the Website clearly provides support for and is connected to Defendants' stores for its operation and use, the Website is an intangible service, privilege, and advantage of Defendants' brick-and-mortar stores that must comply with all requirements of the ADA.  The Website must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodations subject to the requirements of the ADA.

25)     Plaintiff sought to, seeks to and intends to patronize, in the near future once the Website's access barriers are removed or remedied, one or more of Defendants' physical retail locations, check store hours and product pricing and place online orders. In the alternative, Plaintiff intends to monitor the Website in the near future as a tester to ascertain whether it has been remedied and updated to interact properly with screen reader software.

26)     Traveling outside of his home as a visually disabled individual is often a difficult, hazardous, frightening, frustrating, and confusing experience, thus the opportunity to shop and pre-shop Defendants' products, plan his visits, and to compare products, services, prices, sales,

discounts, and promotions are important and necessary accommodations for Plaintiff because Defendants have not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

27)      During the month of April 2023, Plaintiff attempted on a number of occasions to utilize the Website to browse through the merchandise and online offers to educate himself as to the merchandise, sales, discounts, and promotions being offered, learn about the brick-and-mortar location, check store hours, and check product pricing with the intent to make a purchase through the Website or in one of the physical locations and with the intent to make a purchase through the website or at one of Defendant's physical stores.  Plaintiff also attempted to access and utilize the Website in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

28)      Plaintiff utilized NVDA ("Screen Reader Software") that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. Plaintiff attempted to purchase clothing on Defendant's website.  However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

29)      Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These barriers are pervasive and include, but are not limited to:

Claires: https://www.claires.com/

System settings while doing the review:

Operating system: Windows 10

Browser: Google Chrome v. 111.0.5563.147

Screen Reader: NVDA v. 2023.1

List of violations encountered:


**Violation 01: Standard 2.2.2 Pause, Stop, Hide notes that:**

For moving, blinking, scrolling, or auto-updating information, all of the following are true:

- **Moving, blinking, scrolling:** For any moving, blinking or scrolling information that (1) starts automatically, (2) lasts more than five seconds, and (3) is presented in parallel with other content, there is a mechanism for the user to pause, stop, or hide it unless the movement, blinking, or scrolling is part of an activity where it is essential; and

- **Auto-updating:** For any auto-updating information that (1) starts automatically and (2) is presented in parallel with other content, there is a mechanism for the user to pause, stop, or hide it or to control the frequency of the update unless the auto-updating is part of an activity where it is essential.

When the user opens the website, the hello bar shows content in a carousel that starts playing automatically and lasts more than five seconds, but there is no control to pause, stop, or hide the animation. The user is not able to navigate the site without a constant distraction.

Applicable WCAG 2.1 Standard at Issue: 2.2.2 Pause, Stop, Hide (Level A)

URL Where Issue Was Encountered:

https://www.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1A5uSFgFBew98uKcdZTLvRkU3mY7S-dWd/view?usp=share_link


**Violation 02: Standard 1.4.3 Contrast (Minimum) notes that:**

The visual presentation of text and images of text has a contrast ratio of at least 4.5:1, except for the following:

- **Large Text:** Large-scale text and images of large-scale text have a contrast ratio of at least 3:1;

- **Incidental:** Text or images of text that are part of an inactive user interface component, that are pure decoration, that are not visible to anyone, or that are part of a picture that contains significant other visual content, have no contrast requirement.

- **Logotypes:** Text that is part of a logo or brand name has no contrast requirement.

When a user tries to skip to the main content, the Skip box has content that is not visible (below the contrast ratio minimum). The user is not able to skip to the main content.

Applicable WCAG 2.1 Standard at Issue: 1.4.3 Contrast (Minimum)  (Level AA)

URL Where Issue Was Encountered:

https://www.claires.com/ (all pages)

Screen Capture Evidence:

https://drive.google.com/file/d/1A5uSFgFBew98uKcdZTLvRkU3mY7S-dWd/view?usp=share_link

**Violation 03: Standard 2.4.4 Link Purpose (In Context) notes that:**

The purpose of each link can be determined from the link text alone or from the link text together with its programmatically determined link context, except where the purpose of the link would be ambiguous to users in general.

When the user tries to navigate some links on the home page, the link label provided does not properly describe the purpose of the link. The user is not able to understand the purpose of the link and is not able to navigate to some parts of the website.

Applicable WCAG 2.1 Standard at Issue: 2.4.4 Link Purpose (In Context) (Level A)

URL Where Issue Was Encountered:

https://www.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1A5uSFgFBew98uKcdZTLvRkU3mY7S-dWd/view?usp=share_link

**Violation 04: Standard 2.2.2 Pause, Stop, Hide notes that:**

For moving, blinking, scrolling, or auto-updating information, all of the following are true:

- **Moving, blinking, scrolling:** For any moving, blinking or scrolling information that (1) starts automatically, (2) lasts more than five seconds, and (3) is presented in

parallel with other content, there is a mechanism for the user to pause, stop, or hide it unless the movement, blinking, or scrolling is part of an activity where it is essential; and

- **Auto-updating:** For any auto-updating information that (1) starts automatically and (2) is presented in parallel with other content, there is a mechanism for the user to pause, stop, or hide it or to control the frequency of the update unless the auto-updating is part of an activity where it is essential.

When the user opens the home page, the hero/main banner shows content in a carousel that starts playing automatically and lasts more than five seconds, but there is no control to pause, stop, or hide the animation. The user is not able to navigate the site without a constant distraction.

Applicable WCAG 2.1 Standard at Issue: 2.2.2 Pause, Stop, Hide (Level A)

URL Where Issue Was Encountered:

https://www.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1UcE4piCLlVRSYTlxIDJVh0_8IboHDAN8/view?usp=share_link

**Violation 05: Standard 3.3.2 Labels or Instructions notes that:**

Labels or instructions are provided when content requires user input.

When the user tries to locate a store, there is no label identifying the search criterion input field as required. The user is not able to locate stores.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://stores.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1T2ytwNUN5aIIpym4nv26dgNTD-Ui1wRr/view?usp=share_link

**Violation 06: Standard 3.3.1 Error Identification notes that:**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to locate a store and does not specify a search criterion, there is no message to identify the error. The user is not able to locate stores.

Applicable WCAG 2.1 Standard at Issue: 3.3.1  Error Identification (Level A)

URL Where Issue Was Encountered:

https://stores.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1T2ytwNUN5aIIpym4nv26dgNTD-Ui1wRr/view?usp=share_link

**Violation 07: Standard 3.3.2 Labels or Instructions notes that:**

Labels or instructions are provided when content requires user input.

When the user tries to search the website, there is no label identifying the search criterion input field as required. The user is not able to search the website.

Applicable WCAG 2.1 Standard at Issue: 3.3.2 Labels or Instructions (Level A)

URL Where Issue Was Encountered:

https://www.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1wpfMozHNK13lqZEND5j4csCe4BvW4sZ5/view?usp=share_link

**Violation 08: Standard 3.3.1 Error Identification notes that:**

If an input error is automatically detected, the item that is in error is identified and the error is described to the user in text.

When the user tries to search the website and does not provide a search criterion, there is no message to identify the error. The user is not able to search the website.

Applicable WCAG 2.1 Standard at Issue: 3.3.1  Error Identification (Level A)

URL Where Issue Was Encountered:

https://www.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1wpfMozHNK13lqZEND5j4csCe4BvW4sZ5/view?usp=share_link

**Violation 9: Standard 2.4.7 Focus Visible notes that:**

Any keyboard operable user interface has a mode of operation where the keyboard focus indicator is visible.

When a user tries to search the website and tabs to the button of the search box, the keyboard focus indicator is not visible. The user is not able to search the website.

Applicable WCAG 2.1 Standard at Issue: 2.4.7 Focus Visible  (Level AA)

URL Where Issue Was Encountered:

https://www.claires.com/

Screen Capture Evidence:

https://drive.google.com/file/d/1wpfMozHNK13lqZEND5j4csCe4BvW4sZ5/view?usp=share_link

30)     Although the Website appeared to have an "accessibility" statement displayed and an "accessibility" widget/plugin added, the "accessibility" statement and widget/plugin, when tested, still could not be effectively accessed by, and continued to be a barrier to, blind and visually disabled persons, including Plaintiff as a completely blind person. Plaintiff, although he attempted to access the statement, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and the widget/plugin to enable him to quickly, fully, and effectively navigate the Website.

31)     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, as he is unable to participate in the same shopping experience, with the same access to the merchandise, sales, discounts, and promotions, as provided at the Website and in the physical locations as the non-visually disabled public.

32)     Plaintiff desires and intends, in the near future once the Website's access barriers are removed or remedied, to patronize one or more of Defendants' physical stores and to use the

Website, but he is presently unable to do so as he is unable to effectively communicate with Defendants due to his severe visual disability and the Website's access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendants through the Website due to his severe visual disability and the Website's access barriers. Thus, Plaintiff, as well as others who are blind and with visual disabilities, will suffer continuous and ongoing harm from Defendants' intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

33)     On information and belief, Defendants have not initiated a Web Accessibility Policy to ensure full and equal use of the Website by individuals with disabilities.

34)     On information and belief, Defendants have not instituted a Web Accessibility Committee to ensure full and equal use of Website by individuals with disabilities.

35)     On information and belief, Defendants have not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Website by individuals with disabilities.

36)     On information and belief, Defendants have not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

37)     On information and belief, Defendants have not instituted a User Accessibility Testing Group to ensure full and equal use of the Website by individuals with disabilities.

38)     On information and belief, Defendants have not instituted a Bug Fix Priority Policy.

39)     On information and belief, Defendants have not instituted an Automated Web Accessibility Testing program.

40)     Defendants have not created and instituted an effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

41)     Defendants have not created and instituted on the Website a useful or accessible page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendants will have the Website, applications, and digital assets accessible to the visually disabled or blind community.

42)     The Website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Level AA or higher versions of web accessibility.

43)     Defendants have not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals who want the safety and privacy of purchasing Defendants' products offered on the Website and in the physical stores from their homes.

44)     Defendants thus have not provided full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Website and their physical stores in contravention of the ADA.

45)     Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

46)     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet shopping websites such as the Website at issue in the instant action.

47)     Defendants are, and at all relevant times have been, aware of the barriers to effective communication within the Website which prevent individuals with visual disabilities from the means to comprehend information presented therein.

48)     Defendants are, and at all relevant times have been, aware of the need to provide full access to all visitors to the Website.

49)     The barriers that exist on the Website result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

50)     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendants' unlawful and discriminatory practices in connection with its website access and operation.

51)     Notice to Defendants is not required because of Defendants' failure to cure the violations.

52)     Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

53)     Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

**COUNT I – VIOLATION OF THE ADA**

54)     Plaintiff realleges paragraphs 1 through 53 as if set forth fully herein.

55)     Pursuant to 42 U.S.C. §12181(7)(B), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

56)     Pursuant to 42 U.S.C. §12181(7)(B), the Website is covered under the ADA because it provides the general public with the ability to view the products available at Defendant's locations,

purchase products through Defendant's website, subscribe to Defendant's newsletter, create an account and register to track orders, create a wish list, and learn the story behind Defendant's brand. The Website thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendants' physical locations. Further, the Website also serves to augment Defendants' physical stores by providing the public information about the stores and by educating the public as to Defendants' brand and available products merchandise sold through the Website and in the physical stores.

57)     Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

58)     Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

59)     In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of

the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

60)     The Website must comply with the ADA, but it does not as specifically alleged hereinabove and below.

61)     Because of the inaccessibility of the Website, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendants have made available to the public on the Website and in their physical stores in violation of 42 U.S.C. §12101, et seq, and as prohibited by 42 U.S.C. §12182, et seq.

62)     The Website was subsequently visited by Plaintiff's expert in April and the expert determination was that the same access barriers that Plaintiff had initially encountered, as well as numerous additional access barriers, existed. Defendants thus have made insufficient material changes or improvements to the Website to enable its full use and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff. Also, when the Website was visited by the expert, although the Website appeared to have an "accessibility" statement and widget/plugin linked on and displayed from its home page, the "accessibility" statement and widget/plugin, when tested, still could not be effectively used or accessed by, and continued to be a barrier to, blind and visually disabled persons such as Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Website to visually disabled individuals, nor has it posted on the Website an effective and useful "accessibility" notice, statement, or policy to provide blind and visually disabled person such as Plaintiff with a viable alternative means to access and navigate the Website. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with

disabilities, in violation of 28 C.F.R. §36.302. The lack of a viable and effective "accessibility" notice, policy, or statement and the numerous access barriers as set forth in the Declaration of Plaintiff's expert, Ryan Browne, attached hereto and the contents of which are incorporated herein by reference, continue to render the Website not fully accessible to users who are blind and visually disabled, including Plaintiff.

63)    More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

64)    There are readily available, well-established guidelines on the internet for making Websites accessible to the blind and visually disabled. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendants' business nor would it result in an undue burden to Defendants.

65)    Defendants have violated the ADA -- and continue to violate the ADA -- by denying access to the Website by individuals such as Plaintiff with visual disabilities who require the assistance of interface with screen reader software to comprehend and access internet websites. These violations within the Website are ongoing.

66)    The ADA requires that public accommodations and places of public accommodation ensure that communication is effective.

67)    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems". Indeed, 28  C.F.R.§36.303(b)(2)

specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68) According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69) Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70) As alleged hereinabove, the Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

71) As a direct and proximate result of Defendants' failure to provide an ADA compliant Website, with a nexus to their brick-and-mortar stores, Plaintiff has suffered an injury in fact by being denied full access to, enjoyment of, and communication with Defendants' Website and its physical stores.

72) Because of the inadequate development and administration of the Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73) Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

i.      Require Defendants to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the Website to a functional statement as to the Defendants' policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations through the Website and the physical locations.

ii.      Require Defendants to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website's being made readily accessible, provide an effective alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

iii.      Require Defendants to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendants' stores and becoming informed of and purchasing Defendants' products, and during that time period prior to the Website's being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

iv.      Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

74)      WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

a.      A declaration that Defendant's website is in violation of the ADA;

b.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

c.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1]would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

d.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

e.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

---

[1] 

f.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

g.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

h.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

i.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

j.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

k.      An award to Plaintiff of his reasonable attorney's fees and costs pursuant to in 42 U.S.C. §§12181-12189, and pursuant to such other laws and statutes that may apply, and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

Plaintiff realleges paragraphs 1 through 53 as if set forth herein.

75)     Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

76)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

77)     The "pop-up" or banner notice that appears on Defendant's website does not properly audibilize the cookies policy in a way where a visually disabled person like the Plaintiff can properly understand or give informed consent to allow tracking cookies to be placed on his computer.

78)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

79)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

80)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom of the page called "Cookies Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain

non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

**INFORMATION WE COLLECT**

**A. INFORMATION YOU SUBMIT**

We, and our vendors, may obtain personal information that you provide to us directly, for example, data you submit when you complete contact forms, sign up for marketing or informational newsletters, and shop or complete an order on the Site. Personal information we collect may include your name, mailing and billing address, username, email address, phone number, date of birth, and payment processing information. If you submit the personal information of another person, you represent that you have obtained the authorization from that person to submit such personal information to us. If you use the Claire's mobile application, information collected through the Site related to your Claire's account and settings may not be synchronized between the Site and the Claire's mobile application.

**B. TRACKING TECHNOLOGIES**

We may use tracking technologies, such as cookies, including tracking technologies managed by vendors or external parties. Tracking technologies can generally be categorized as follows:

**Strictly Necessary**. These tracking technologies are used for core functionality, for example for security and to enforce your privacy preferences. Without these cookies, some functionality of the Site will fail.

**Social Media**. These tracking technologies enable you to connect to social media networks, such as allowing you to share content or log in using your social media credentials. Without these cookies, some social media integration functionality of the Site will fail.

**Functional and Performance**. These tracking technologies help to improve our services, including the Site, such as allowing us to measure the performance of the Site, know which webpages are the most and least popular, see how visitors move around the Site, and provide enhanced functionality. For example, these cookies may observe your mouse movements on the Site for us to better understand the efficiency of the Site's user interface and design.

**Advertising**. These tracking technologies help us and other parties personalize ads that are shown to you on our sites and services, as well as on other online services. If enabled, these tracking technologies will allow other parties engaged in interest-based advertising on our Services to understand your use of online services across platforms and over time. Advertising tracking technologies may be used to deliver advertisements, create a profile of you, measure your interests, detect your demographics, detect your location, detect your device, and personalize content

Tracking technologies may collect usage information such as the browser you are using, your IP address or other unique identifier, geolocation, search terms, your use of the Site (including clicks, movement, scrolling, and keystroke activity), the URL that referred you to our Site, all of the areas within our Site that you visit, anonymous traffic data, and the time of the visit. Some tracking technologies may use general geolocation location for purposes such as verifying your location and delivering or restricting content based on your location, such as our "store locator" to suggest appropriate store locations. Additionally, some tracking technology may enable security features and allow us to detect activity that might violate our rules and terms, such as unauthorized access or activity.

We or external parties may collect personal data about your online activities over time and across different online services when you use the Services. We may combine tracking technology information with other personal information about you, such as combining your usage information with offline purchasing behaviors.

You may be able to opt out of certain interest-based behavioral advertising by visiting: www.youradchoices.com or www.networkadvertising.org. You can set your browser to refuse cookies from websites or send a "Do Not Track" signal, but if you do so, you may not be able to access or use portions of the Site, or certain offerings on the Site may not function as intended or as well. Opting out does not mean that you will no longer receive advertising from us, or when you use the Internet. Opt outs do not affect strictly necessary tracking technologies.

We may use certain external party tracking technology services, such as the following:

Snap and its affiliates, may collect information to may use that information to provide measurement services, ad targeting, and other advertising services

RTB House, which may provide its own opt out program, which you can learn more about by reviewing the RTB House Services Privacy Policy: www.rtbhouse.com/privacy-center

Microsoft Advertising, through its Universal Event Tracking (UET) feature or Clarity services, may collect information subject to its Microsoft Privacy Statement: privacy.microsoft.com/en-us/privacystatement

Google Analytics Advertising features such as dynamic remarketing, interest-based advertising, audience targeting, behavioral reporting, demographics and interests reporting, user segment analysis, device reporting, display advertising, and video ads reporting. For more information on how Google Analytics uses data collected through the Site, visit: www.google.com/policies/privacy/partners/. To opt out of Google Analytics cookies, visit: http://www.google.com/settings/ads and https://tools.google.com/dlpage/gaoptout/

Adobe Tag Manager; to opt out of Adobe cookies, visit: https://www.adobe.com/privacy/opt-out.html

Facebook Custom Audience; you can opt out by logging into your Facebook account and changing your privacy or advertising settings as per Facebook's opt-out instructions. You

may also use your Facebook account settings to unlink your Facebook account from the Site

TikTok, which may use Device Data Collection Tools to collect information about how users use interact with online services to provide measurement services and/or targeted ads

- Amazon may use tracking technologies to show interest-based ads on the Site and across the Internet. To opt out of receiving interest-based ads from Amazon visit the relevant Amazon Ads Preferences page.

We do not represent that these external party tools, programs, or statements are complete or accurate. Note that clearing cookies or changing browser or device settings may affect your choices when using various sites and services, and you may need to opt out separately via each browser and/or electronic device you use.

81)     Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer.  Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

82)     Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## REQUEST FOR JURY TRIAL

Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email:info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  786-290-1963
Facsimile:  305-824-3868
Email: radamslaw7@gmail.com
By: _____/s/_____
RICHARD J. ADAMS, ESQ.
FL BAR NO.: 770434